### FLANNIGAN ET AL. *v.* STATE OF INDIANA.

[No. 23,833. Filed March 29, 1922.]

1. CRIMINAL LAW.— *Appeal.— Assignment of Error.— Matters Presented.—Causes for New Trial.*—Alleged errors which are properly causes for a new trial cannot be assigned as independent error on appeal. p. 20.

2. CRIMINAL LAW.—*Appeal.—Briefs.—Points.—Waiver of Error.* —The court on appeal will consider only such specifications of error assigned as causes for new trial as are presented in the points and authorities in appellants' brief, all others being waived. p. 21.

3. CRIMINAL LAW.—*Appeal.—Presenting Questions for Review. —Examination of Jurors.—Statutes.*—Although the motion for a new trial is part of the record under §691b Burns' Supp. 1918, Acts 1917 p. 523, §2, alleged error in refusing to permit certain questions to be propounded to jurors on their *voir dire* examination cannot be presented for review by recitals of the examination in the motion for new trial, such recitals not being authenticated by the trial court. p. 21.

4. CRIMINAL LAW.— *Appeal.— Review.— Harmless Error.—Admission of Evidence.*—In a prosecution for assault and battery with intent to kill, defended on the theory of self-defense, and that the accused used only reasonable force to expel the prosecuting witness from their land, and that they thought he intended to use a revolver, the admission of testimony of the prosecuting witness that he was a special constable, and was called at different times to do work for a detective association, introduced by the state in an attempt to explain the presence of a revolver where the prosecuting witness fell when knocked down, even if erroneous, was favorable to defendants rather than prejudicial; the prosecuting witness having denied having a revolver at the time of the assault. p. 22.

5. CRIMINAL LAW.— *Evidence.— Admissibility.— Admissions of One Defendant.—Competency as against Codefendant.*—Where two defendants, E. and C., were by agreement being tried together on charges preferred by two affidavits against E., one for assault and battery with intent, and the other as an accessory before the fact, and one against C., charging assault and battery with intent, evidence of a declaration of C., made some time after the alleged crime, that it was a good thing that one present at the time of the assault did not let him have an ax, or he would have killed the victim of the assault, was admissible against C. only, and should have been limited as inadmissible against E. p. 23.

Flannigan v. State—192 Ind. 19.

6. CRIMINAL LAW.—*Appeal.*—*Review.*— *Harmless Error.*— *Mistake in Spelling Defendants' Name in Instructions.*—In a prosecution for assault and battery with intent, the spelling of defendants' surname as "Flannigam" instead of "Flannigan" in four out of nine instructions in which defendants were mentioned by name, was harmless. p. 23.

7. CRIMINAL LAW.—*Appeal.*—*Briefs.*—*Waiver of Error.*—*Points and Authorities.*—Alleged error in instructions not referred to in the points and authorities in appellants' brief is waived. p. 23.

8. CRIMINAL LAW.— *Appeal.*— *Review.*— *Evidence.*—*Sufficiency.* —The court on appeal may interfere with the judgment of the trial court for insufficiency of the evidence to sustain the verdict or decision only when there is no legitimate evidence to sustain a fact essential to support the verdict. p. 24.

9. HOMICIDE.—*Evidence.*—*Sufficiency.*—In a prosecution of two defendants for assault and battery with intent to kill, evidence *held* sufficient to sustain a conviction of both. p. 24.

From Montgomery Circuit Court; *Jere West,* Judge.

Prosecution by the State of Indiana against Charles Flannigan and Everett Flannigan. From a judgment of conviction, the defendants appeal. *Affirmed.*

*Henry D. Van Cleave* and *Arthur McGaughey,* for appellants.

*U. S. Lesh,* Attorney-General, and *A. G. Cavins,* for the state.

MYERS, J.—In the court below, appellants were charged, tried and convicted of assault and battery with intent to kill one James E. Dykes, and judgment was rendered fixing their punishment as prescribed by statute, §2240 Burns 1914, Acts 1905 p. 584, §352. Appellants' separate and several motions for a new trial were each overruled and these rulings are assigned as error. The other alleged errors are properly causes for a new trial and cannot be assigned as independent errors on appeal. *Allen* v. *State* (1881), 74 Ind. 216; *Lewis* v. *State* (1895), 142 Ind. 30, 41 N. E. 310; *Hedrick* v. *Hall* (1900), 155 Ind. 371, 373, 58

N. E. 257; *Reeves & Co.* v. *Gillette* (1911), 47 Ind. App. 221, 94 N. E. 242.

The causes in support of each motion are the same and raise the same questions for decision, hence no purpose will be subserved by particularizing either appellant. We must consider appellants' points and authorities as directing our attention to the questions for decision. All other causes in the motion for a new trial will be regarded as waived. *Schmoe* v. *Cotton, Admx.* (1906), 167 Ind. 364, 79 N. E. 184; *Schondel* v. *State* (1910), 174 Ind. 734, 739, 93 N. E. 67; *Wellington* v. *Reynolds* (1912), 177 Ind. 49, 55, 97 N. E. 155; *Dorsey* v. *State* (1913), 179 Ind. 531, 100 N. E. 369; *Krabbe* v. *City of Lafayette* (1919), 70 Ind. App. 428, 123 N. E. 424; *Vandalia Coal Co.* v. *Butler* (1918), 68 Ind. App. 245, 119 N. E. 34.

Appellants first contend that the court erred in refusing to permit them to propound certain questions to the jurors on their *voir dire* examination. There has been no attempt to bring this examination into the record other than by the recitals in the motion for a new trial. Matters of this character cannot be so presented. *Heath* v. *State* (1910), 173 Ind. 296, 300, 90 N. E. 310, 21 Ann. Cas. 1056, and cases there cited.

True, as appellants claim, a motion for a new trial is a part of the record, but it does not necessarily follow that the trial court thereby authenticates the correctness of such recitals. Hence, there is no question presented pertaining to the qualifications of jurors even under §2, Acts 1917 p. 523, §691b Burns' Supp. 1918.

Appellants next assert that the court erred in permitting the state to introduce certain evidence over their objections. The evidence thus questioned refers to the testimony of the prosecuting witness wherein he said that he had been employed by a Mr. Harding to help

make a survey; that he had been commissioned as a special constable by the commissioners of Clinton county, and as such, had been called at different times by the Horsethief Detective Association to do work for them; and also testimony of Lee Gentry, a witness offered by the state, wherein over the objection of Everett Flannigan he testified that in a conversation with Charles Flannigan concerning the trouble with the prosecuting witness Charles Flannigan said: "It was a good thing for him (Dykes) that John Worth didn't let him have the ax or he would have killed Dykes with it."

Appellants justify their actions on the theory of self-defense and that they used no more force than was necessary to expel the prosecuting witness from their land upon his refusal to heed their request so to do, and their belief of his possession of a revolver which he intended to use if necessary in order to force his way across their land.

The undisputed evidence shows that Everett struck the prosecuting witness with his fist on the side and back part of his neck, knocking him down. At the place where he fell and at the time he was picked up, a revolver was found by a witness to the trouble and left in his woodhouse. The prosecuting witness, however, denied having a revolver, although there is evidence tending to show that he owned one and sometimes carried it. There is no evidence tending to connect either of appellants with the revolver. By showing that this witness was a special constable and had done some detective work, the state attempted to furnish an excuse for Dykes' possession of the revolver, if in fact he had one. It appears to us that this excusing testimony was favorable to appellants rather than harmful.

As to the Gentry testimony, it must be kept in mind that appellants, by agreement, were being tried at the

same time upon charges preferred by three sepa-
rate affidavits, two against Everett, one for as-
sault and battery with intent and the other as
an accessory before the fact, and Charles, by an affi-
davit charging him with assault and battery with intent.
On the trial these affidavits, it seems, were tried as one
affidavit containing three counts.

The declaration of Charles two or three weeks after
the alleged crime, of course, would not be admissible as
against Everett, but it was admissible against Charles.
*Allen* v. *State, supra.* It should have been so limited,
but the question of its admissibility was correctly de-
cided.

Appellants say the instructions given by the court
upon its own motion were each separately and severally
erroneous, for the reason that "in each instruc-
tion throughout the several instructions given
from 1 to 58 inclusive, the appellants are each
referred to as *Flannigam"* and for that reason they are
entitled to a new trial. It appears that appellants were
mentioned by name in nine of the fifty-nine instructions
given and in four of these as *Flannigam* and in five as
*Flannigan.* Appellants' contention in this particular is
without merit.

Appellants' points and authorities direct our attention
to instructions Nos. 6 and 58, and any question as to
any others must be regarded as waived. By in-
struction No. 6 the court explained to the jury
the elements embraced in a charge of assault and
battery with intent to kill. It is not subject to criti-
cism as being speculative or as embracing subjects
foreign to such a charge. Following this instruction
the court gave six others covering murder in the first
degree, murder in the second degree and voluntary man-
slaughter as felonies within the range of the considera-
tion of the jury on the question of intent. By these

instructions the jury was unmistakably informed as to its duty respecting the essential elements included in the charge, and all of which, according to the instructions, it was required to find beyond a reasonable doubt before it would be authorized to return a verdict of guilty.

Instruction No. 58 was on the subject of the character of the verdict which the jury would be authorized to return under the charges preferred, and was clearly a correct instruction.

Finally it is insisted that the verdict of the jury is not sustained by sufficient evidence. From the general trend of the argument in support of appellants'

8. contention in this respect it would seem that counsel have overlooked the fact that this court occupies a different position from that of the trial court. What our conclusion might be upon the evidence generally is unimportant. This court can only interfere with the judgment of the trial court on the question of evidence to sustain the verdict or decision of the court when it is made to appear that there is no legitimate evidence to sustain a fact essential to support the verdict. *Indiana Steel, etc., Co.* v. *Studes* (1918), 187 Ind. 469, 119 N. E. 2.

One of the appellants, Everett Flannigan, largely relies upon the fact that he struck the prosecuting witness with his fist only and his denial of any inten-

9. tion to kill his victim. Looking to the evidence and without attempting to recite it in detail, it appears that for several years before the day of the alleged assault and battery, the prosecuting witness and appellants resided about eighty rods apart and on their respective farms; that for many years a bitterness and enmity existed between these parties which was intensified by the action of the prosecuting witness in petitioning for a drain beginning on his land and extending

across appellants' land and some distance beyond. The question as to whether each of the parties to the trouble had notified the other to keep off of his land is affirmed by appellants and denied by the prosecuting witness. The testimony of these witnesses indicates a disposition of long standing to rely upon some technical right or supposed technical authority to do that which would annoy or exasperate the other. On the day of the alleged trouble, certain persons appointed by the Montgomery Circuit Court to view and report upon the drain for which the prosecuting witness had petitioned, called upon him to accompany them and carry one end of the surveyor's tape and stakes used in locating the proposed ditch; that he accepted the invitation and while thus engaged with others in making the survey across appellants' farm, Charles Flannigan accosted him and requested that he leave their farm by going back the way he came. Dykes promptly refused the request and asserted his right to be there, at the same time saying he would leave the farm in the direction they were going. The surveying party was then going in a northerly direction and were only a few feet from appellants' north line. About that time Charles called to his brother Everett who was some distance away and who immediately came to the scene of the trouble, and approached Dykes ordering him to get off of their farm. Thereupon as Dykes turned from Everett, or, as some witnesses say, started to pursue his work with stakes under his left arm and his right hand holding the front end of the tape, Everett struck him, as we have before stated, and while he was down and apparently lifeless he again struck him once or twice with his fist before other members of the surveying gang could interfere. While members of the surveying party were rendering aid and assistance to the prosecuting witness, Charles struck him over the head with a club, inflicting bruises

and cuts on the side of his head, from which there was a considerable hemorrhage.

It is clear from the evidence that Everett and his brother acted in concert. The hatred was present on the part of each of the parties to the trouble. The jury had all of the parties before it. It had the opportunity of observing their appearance, age, physical condition and other circumstances which might readily turn the scales of otherwise evenly balanced evidence. *Indiana Steel, etc., Co.* v. *Studes, supra.*

We have carefully read and considered all of the evidence given in the cause, but we have included in this opinion only such references as might be useful in a better understanding of the case and the questions presented for decision. Our conclusion upon the whole record is that the jury was clearly instructed as to the law governing the rights of each of the parties—state and appellants—and well within the evidence as presented to us by the record. While we may pause to say the case as made against Everett is not a strong one and lacks evidence of that vicious character shown to have been in the mind of Charles, yet we cannot find justification for reversing the judgment against either.

The judgment as to both appellants is therefore affirmed.